IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KHANDIESE COOPER § | |
| § | |
| v. § | A-07-CA-082 LY |
| § | |
| KILLEEN INDEPENDENT SCHOOL § | |
| DISTRICT, AND KENNETH § | |
| EDMISTON, INDIVIDUALLY AND IN § | |
| HIS OFFICIAL CAPACITY § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. §636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.  Before the Court is Defendants' Motion for Summary Judgment filed November 26, 2007 (Clerk's Doc. No. 17) and Cooper's Motion to Continue Under Rule 56(f) (Clerk's Doc. No. 26).  On December 26, 2007, Judge Yeakel referred these motions to the Court for a Report and Recommendation.

**STANDARD OF REVIEW**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986);  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact

is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986);  *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary-judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary-judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary-judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim.  *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment.  *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.  Disputed fact issues which are "irrelevant and

unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## BACKGROUND

This lawsuit arises out of an incident at a Killeen High School (KHS) basketball game on February 7, 2006. Plaintiff, Khandiese Cooper, a seventeen-year-old honor student and track and field athlete at Ellison High School, traveled to Killeen to attend a sold-out high school basketball game with her fourteen-year-old sister, Moni. Defendant Edmiston, a Killeen Independent School District (KISD) police officer, was working security at the entrance to the school.

Cooper, who is African-American (Edmiston is white), walked up to the doors and beckoned the ticket-taker, who had since stopped collecting money and tickets because the game was sold-out, and engaged in conversation with her. Cooper had a ticket to the game, but Moni did not. To complicate matters further, Cooper did not have her ticket with her; her friend already inside the game did. The ticket-taker instructed Cooper to call her friend on her cell phone and Cooper's friend came down and delivered the ticket.

At this point, Cooper was half-in the door still bargaining with the ticket-taker to determine if there was any way to get her sister into the game. At this point, Edmiston approached Cooper. Cooper was asked by Edmiston if she had a ticket to the game. Cooper explained that she had a ticket but was trying to obtain one for her younger sister. Edmiston then asked her "Are you in or out?" After more discussion, Edmiston asked her again if she was in or out. The ticket-taker stated

that Cooper then replied to Edmiston, "You don't talk to me that way." Cooper denies she said this.[1] In any event, Cooper, wanting to attend the game (apparently Ellison and Killeen have a fierce sports rivalry), said she was "in" and proceeded to attempt to walk through the door. However, Edmiston told her "No, you are out."

The summary judgment evidence diverges regarding what happened next. Edmiston's and the ticket taker's testimony is essentially this: Cooper, after Edmiston told her she was out, attempted to walk past or push past Edmiston. Edmiston, who probably weighs twice as much as Cooper and is significantly taller, was standing in the door. Edmiston stood firm, but Cooper continued her attempt to get in. Edmiston, feeling that Coooer was criminally trespassing on KHS property, "grabbed her right arm and tried to restrain her to take her into custody." *See* Defendant's Motion for Summary Judgment, Exh. B at 46. Cooper resisted, according to Edmiston, and they ended up hitting the outside of one of the glass doors. Then, after even more resistance, Edmiston ended up on top of Cooper on the ground. He eventually handcuffed Cooper and brought her to a detention room in the school.

The testimony of Cooper, Moni and another eyewitness (who knows the Cooper family) is different. That testimony boils down to this: with no provocation, Edmiston, after telling Cooper she was "out," put Cooper's arm behind her back, and threw her, face first, into the nearby glass door. When Cooper attempted to lift her face back from the glass door, Edmiston pushed it back against the door. He then proceeded to use his weight to force Cooper onto the concrete (Cooper

---

[1] Edmiston, at Cooper's criminal trial (Cooper was charged with criminal trespass and interference with public duties, charges that were dismissed by the State after a jury hung), also testified that Cooper said something to this effect. None of the witnesses called by Cooper testified that they heard her say this.

notes that she is only 125 lbs.) with his knee to her back, and then handcuffed her. One witness testified that Edmiston "body slammed" Cooper. Plaintiff's Response, Exh B at 131. All the while, Cooper testified, she was screaming and crying, as was her little sister.

Cooper was charged with criminal trespass and interference with public duties, charges that have since been dismissed. Cooper suffered bruising, a bloodied knee, a skinned nose, and cuts on her wrist from the handcuffs. Cooper filed this lawsuit against Edmiston – in his official and individual capacities – and KISD alleging violations of her Fourth and Fourteenth Amendment rights via § 1983. She also brought state law tort claims of assault and battery, false imprisonment, and assault by offensive physical contact against Edmiston. Defendants filed a motion to dismiss, which the Court granted as to the official capacity claims against Edmiston. All other claims were retained. Defendants now move for summary judgment on all claims.

## ANALYSIS

**A.   Motion to Continue under Rule 56(f)**

Cooper has filed a motion to continue, arguing that Defendants' motion for summary judgment is premature because an adequate time for discovery has not passed and because Defendants have not produced any witnesses for deposition. Cooper also contends that these issues are the subject of a pending motion to compel. Finally, Cooper contends that some of Defendants' responses to written discovery are also deficient.

Notwithstanding Plaintiff's contention, there is no motion to compel on file, nor is there a record of one being filed. Thus, Cooper has not asked the Court for relief regarding discovery issues. Moreover, the discovery deadline is well past. Nor does Cooper, other than engaging in generalities, show how the record developed in this lawsuit – filed nearly a year ago on February 1, 2007 – is not

amenable to disposition on a summary judgment motion. The Court will **DENY** Cooper's Motion to Continue (docketed as part of Clerk's Doc. No. 26)**.**

**B.      § 1983 Claims Against Edmiston**

Cooper is bringing claims against Edmiston in his individual capacity for violation of her constitutional rights under the Fourth and Fourteenth amendment for excessive force and false arrest. Edmiston claims he is entitled to qualified immunity.

Courts apply a two-step analysis to determine whether a defendant is entitled to summary judgment on the basis of qualified immunity. First, they determine whether, viewing the summary judgment evidence in the light most favorable to the plaintiff, the defendant violated the plaintiff's constitutional rights. *See, e.g., Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005); *McClendon v. City of Columbia*, 305 F.3d 314, 322-23 (5th Cir. 2002) (en banc); *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001). If there was no such violation, the analysis ends there. If a violation did occur, the next consideration is whether the defendant's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. *See, e.g., Tarver*, 410 F.3d at 750; *Glenn*, 242 F.3d at 312. To make this determination, the court applies an objective standard based on the viewpoint of a reasonable official in light of the information then available to the defendant and the law that was clearly established at the time of the defendant's actions. *See Glenn*, 242 F.3d at 312; *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000); *see also Tarver*, 410 F.3d at 750 ("If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact.").

      **1.**      **Excessive Force**

The Supreme Court has held that "all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force claim is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citations omitted).

It is clearly established law in the Fifth Circuit that in order to state a claim for excessive force in violation of the Constitution, a plaintiff must allege "(1) an injury which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993) (internal quotations omitted). In gauging the objective reasonableness of the force used by a law enforcement officer, the Court must balance the amount of force used against the need for that force. *Id.* This balancing test "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396.

Whether an injury is cognizable and whether the use of force is objectively reasonable are inextricably linked questions. The amount of injury necessary to satisfy the requirement of 'some injury' and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Flores v. City of Palacios*, 381 F.3d 391, 399 (5 th Cir. 2004) (citing *Ikerd v. Blair*, 101 F.3d 430, 434-35 (5th Cir.1996)). The definition of a cognizable injury, therefore, changes with the facts of each case. *Flores*, 381. F.3d at 399 n.6; *see*

7

*also Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999) (holding that choking the plaintiff was a cognizable injury when it served no legitimate purpose but that it was not a cognizable injury when it was incident to a search of the plaintiff's mouth for drugs). If the force used is constitutionally permissible, *i.e.*, objectively reasonable, the plaintiff has not, by definition, suffered a cognizable injury and her injury is by definition *de minimis*. *Ikerd*, 101 F.3d at 434; *see also Williams*, 180 F.3d at 704.

There cannot be a dispute that Cooper has alleged a violation of a constitutional right, *see Spann*, 987 F.2d at1115, therefore the inquiry must focus on the second prong of the qualified immunity analysis. The second prong of the analysis is better understood as two separate inquiries: whether the constitutional right allegedly violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in light of that law. *Tarver*, 410 F.3d at 750. On the first issue, there is no dispute here that, at the time of the incident, Cooper's right to not to be arrested through the use of excessive force was clearly established. *See Spann*, 987 F.2d at1115. Defendants do not contest this point.

The inquiry, then, will focus on whether Edmiston's conduct was objectively reasonable in light of the clearly established law against use of excessive force when effectuating an arrest. Edmiston's argument that his conduct was reasonable boils down to a claim that he acted in a reasonable manner because Cooper's injuries were "relatively minor," and her claim of excessive force "must be viewed with considerable skepticism, and with an eye toward [Edmiston's] reasonable belief that [Cooper] continued to resist his lawful order." *See* Defendants' Motion for Summary Judgment at 3, 4. This argument – measuring excessiveness vis-a-vis the extent of the injuries – is inconsistent with the Fifth Circuit's excessive force law. Instead, what constitutes an

8

injury in an excessive force claim is defined entirely by the context in which the injury arises. This is illustrated by *Williams*. There, the Fifth Circuit held that an alleged choking that happened during the course of a search of the plaintiff's mouth was not enough to sustain an excessive force claim, but also found a material fact issue preventing summary judgment existed as to the plaintiff's excessive force claim that resulted from a *second* alleged choking that occurred after he had complained to the officer about the initial choking (*i.e.*, the second choking was putatively "motivated entirely by malice"). *Williams*, 180 F.3d at 704.

Under our facts, there is plainly a genuine issue of material fact as to whether, given the circumstances, Edmiston used force that was greater than necessary to effectuate his arrest of Cooper. At this stage of the proceedings, the Court must draw all inferences in the light most favorable to the non-movant, Cooper. Cooper and others have testified that Edmiston smashed Cooper against a door without provocation, and then "body slammed" her to the ground. Cooper denies having resisted, or provided any reason for Edmiston's use of force. If Cooper, her sister's, and their friend's testimony is credited, Edmiston's conduct is plainly objectively unreasonable. *Ikerd*, 101 F.3d at 434. Edmiston's argument that Cooper's injuries were *de minimis* and that he used force congruent to Cooper's resistance ignores contravening testimony and thus the proper standard of review in a summary judgment motion. *Matsushita*, 475 U.S. at 587 ("the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party."). Summary judgment on this claim is therefore unwarranted.

  **2.**  **Wrongful Arrest**

It is plain that Cooper has a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause. *See Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007);

9

*see also Flores*, 381 F.3d at 402; *Glenn*, 242 F.3d at 313.  Therefore, as above, the issue is whether Edmiston's conduct in arresting Cooper was objectively unreasonable in light of the clearly established law.  An arrest is unlawful unless it is supported by probable cause.  *Flores*, 381 F.3d at 402.  "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense."  *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996).  "There must not even 'arguably' be probable cause for the search and arrest for immunity to be lost."  *Hart v. O'Brien*, 127 F.3d 424, 444 (5th Cir. 1997).  That is, if a reasonable officer could have concluded that there was probable cause upon the facts then available to him, qualified immunity will apply.  *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001).

   Edmiston argues that he had probable cause to arrest Cooper for: (1) criminal trespass and (2) interference with public duties.  The Texas Penal Code states that "[a] person commits a criminal trespass if he enters or remains on property of another without effective consent and he had notice that the entry was forbidden or received notice to depart but failed to do so."  *See* TEX. PENAL CODE ANN. § 30.05(a).  Edmiston correctly points out that qualified immunity protects officers who "reasonably but mistakenly" violate a plaintiff's constitutional rights.  *Freeman*, 483 F.3d at 415.  However, Edmiston's motion, or at least this section of it, does no more than cite black-letter law and then flatly state, with no analysis of the facts or summary judgment evidence, that he had probable cause to arrest.  This is an insufficient basis on which to request summary judgment.

   In any event, much like above, Edmiston's argument ignores the summary judgment standard of review.  Were his (and the ticket-taker's) testimony that Cooper attempted to shove her way past him once Edmiston told Cooper she was "out" uncontroverted, Edmiston would likely win his

argument. However, on this material fact, there is controverted testimony. Cooper and other witnesses state that she had a ticket to the sold-out game, and that it was only after Edmiston asked her if she was "in or out" and she replied "in" and began to walk in, that he unilaterally decide she could not come in ("No, you are out"). In other words, if Cooper's version of the events is true then no reasonable officer could have concluded that there was probable cause, upon the facts then available to Edmiston, to believe Cooper was attempting to criminally trespass. In fact, under Cooper's version of the events, it was Edmiston who in effect *created* the trespass by offering her an opportunity to come in and then, once she decided to accept the offer, tell her that she in fact could not come in. In short, whether Edmiston had probable cause turns on whose story is more believable, and this depends on a credibility determination that is not resolvable at the summary judgment stage. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (court "may not make credibility determinations or weigh the evidence."). Therefore, summary judgment is not warranted on Edmiston's argument that the arrest was supported by Cooper's criminal trespass.

Edmiston also argues that he had probable cause to arrest Cooper for interference with public duties. Section 38.15(a)(1) of the Texas Penal Code provides that a person commits the offense of interference with public duties if the person, with criminal negligence, interrupts, disrupts, impedes, or otherwise interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law. TEX. PENAL CODE ANN. 38.15(a)(1). Edmiston, however, fails to point to which facts he contends demonstrate that Cooper interfered with Edmiston's public duties. It appears that Edmiston is arguing that Cooper interfered with him by failing to follow his order that she was "out." This claim, however, is disputed factually by Cooper's summary judgment

11

evidence, and thus summary judgment on this argument is inappropriate on the record before the Court.

**C.      State Law Claims Against Edmiston**

Cooper has additional state law claims against Edmiston for assault and battery, false imprisonment, and assault by offensive physical contact. Under Texas law, official immunity is an affirmative defense that shields governmental employees from personal liability so that they are encouraged to vigorously perform their official duties. *Telthorster v. Tennell*, 92 S.W.2d 457, 460 (Tex. 2002). A governmental employee is entitled to official immunity for: (1) the performance of discretionary duties; (2) that are within the scope of the employee's authority; (3) provided that the employee acts in good faith. *Id*. To obtain summary judgment on the basis of official immunity, a governmental employee must conclusively establish each of these elements. *See University of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). In deciding whether a plaintiff's summary judgment proof conclusively establishes the official-immunity defense, a court must determine whether there are disputed facts material to the elements of the defense. *Telthorster*, 92 S.W.3d at 460.

Because the first two immunity elements have been established by undisputed summary judgment evidence, the only issue here is the last element: whether Edmiston acted in good faith. Edmiston's analysis on this point is lacking. He cites a case that is off-point[2] and then asserts that he is entitled to official immunity as to the state law claims. However, for the same reasons as there

---

[2] Edmiston cites to a Texas state appellate court decision which he contends stands for the proposition that a police officer is entitled to official immunity in a false imprisonment cause of action when he accidentally executed a search warrant on the wrong person. *See* Defendants' Motion at 9.

are fact issues as to Cooper's federal civil rights claims, there are also fact issues regarding whether Edmiston acted in good faith in effectuating Cooper's arrest. Summary judgment should therefore be denied on these claims.

### D. State Law Claims Against the District

KISD argues that it is entitled to summary judgment on the state law claims against it. *See* Defendants' Motion at 8. KISD made the same argument at the motion to dismiss stage, and this Court noted in its Report and Recommendation (now adopted) that Cooper is not suing KISD for any state law claims. There being no state law claims filed against KISD, there is no summary judgment issue on this point.

### E. § 1983 Claims Against KISD

Cooper further alleges that KISD, via its police department and officers, had the following policies in place, creating liability against it under § 1983: (1) employing excessive force against students; (2) arresting students without probable cause; (3) inadequately training and/or supervising the officers assigned to patrol KHS and other KISD schools; and (4) failing to adequately discipline and/or tolerating the use of excessive force by KISD officers.

Local school district liability for a constitutional violation under § 1983 "requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). The policymaker must have final policymaking authority. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Municipal liability cannot be sustained under a theory of respondeat superior. *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997). The unconstitutional conduct must be directly attributable to the municipality through some sort of

official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. *Rivera*, 349 F.3d at 247. Therefore, to sustain liability under § 1983, Cooper must point to more than the actions of a KISD employee; she must identify a policymaker with final policymaking authority and a policy that is the "moving force" behind the alleged constitutional violation.

Though not stated explicitly, Cooper's arguments and evidence only identifies Key, a vice-principal at KHS, as a plausible policymaker. Whether a particular official has final policymaking authority is a question of state law. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). Texas law unequivocally delegates to a school board "the exclusive power and duty to govern and oversee the management of the public schools of the district." TEX. EDUC.CODE. § 11.151(b). The Code provides that "[t]he trustees as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district. All powers and duties not specifically delegated by statute to the agency or to the State Board of Education are reserved for the trustees, and the agency may not substitute its judgment for the lawful exercise of those powers and duties by the trustees." *Id*.

KHS's vice-principal, Jennifer Keys, as a matter of Texas state law, does not have final policy-making authority over KISD**.** Cooper does not implicate the school board as having knowledge of, or in any way ratifying, Edmiston's conduct (in fact, Cooper does not even mention the school board in her brief). Because Cooper has failed to present any summary judgment evidence demonstrating the existence of a policy, practice or custom that was the moving force

behind Edmiston's use of force against and arrest of Cooper, KISD should be granted summary judgment on the § 1983 claims against it.[3]

## RECOMMENDATION

Based on the above, the Court **RECOMMENDS** that the District Court **GRANT IN PART, and DENY IN PART** Defendants' Motion for Summary Judgment (Clerk's Doc. No. 24). The motion should be granted as to the § 1983 claims against KISD. As to all other claims – the § 1983 and state law claims against Edmiston – the motion should be denied.

## WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

---

[3] KISD also contends that it cannot be held liable for punitive damages. Given the Court's recommendation that the only claim against it be dismissed, the point is moot.

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 23rd day of January, 2008.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE